## S01A0267. ECKMAN v. THE STATE.
(548 SE2d 310)

BENHAM, Chief Justice.

Maria and Timothy Giles were fatally shot outside their home near Leesburg in Lee County on December 1, 1996, and their truck stolen. Appellant Karen Michelle Eckman and two male companions were spotted in the stolen truck in Arizona two days later. After an unsuccessful attempt to elude the Arizona police, appellant and William LeMatty were arrested. The third occupant of the stolen truck, Jeremy Brown, killed himself before authorities could arrest him. Appellant and LeMatty were tried separately in Lee County, and appellant was convicted of and sentenced for two counts of malice murder, two counts of aggravated assault of the murder victims, armed robbery, and hijacking the Gileses' truck.[1] She now appeals

---

[1] The crimes occurred on December 1, 1996. Appellant was arrested in Arizona on December 3. She and LeMatty were indicted on February 21, 1997, after a special presentment to the Lee County grand jury. Appellant's trial commenced on November 3, 1997, and concluded four days later with the jury's return of its guilty verdicts. She was sentenced to life imprisonment for the murders, and 20-year terms of imprisonment for each of the other

from the judgment of conviction entered against her.

1. Appellant contends the evidence presented by the State was not sufficient to authorize her convictions. She asserts there was no evidence that she directly committed the crimes and no evidence from which the jury could conclude she was a party to the crimes. OCGA § 16-2-20 (b).

The State presented evidence that the victims were each shot in the back of the head and in the upper back or neck at close range in their carport between 8:30-8:45 p.m. on December 1, 1996. One of the victims was killed by bullets fired from a .357 Magnum GP-100 found in the Gileses' stolen truck in Arizona after appellant and her co-indictee were captured. Also found in the truck was an F.E.G.-brand .380 caliber semi-automatic pistol that was identified as being one of a pair purchased in May 1992 by victim Timothy Giles and his brother. Two other firearms (a Ruger .44 Magnum Redhawk revolver and a Ruger Mark II .22 caliber semi-automatic pistol) were recovered from the stolen truck and they, along with the murder weapon, were identified by their owner as having been stolen from his home in Waycross, Georgia, the night before the Gileses were killed. The gun owner also testified that several $2 bills were taken from his home.

A microanalyst from the Georgia Bureau of Investigation testified that plaster casts taken of one of the three sets of shoe imprints found in a wooded area 60 feet from the site of the murders were "possibly made" by the shoes taken off appellant when she was arrested. A neighbor of the victims identified appellant as the female member of a trio he saw walking into the woods between his and the Gileses' home approximately three hours before the shootings, and a Leesburg police officer testified he recognized appellant's picture in television news reports as one of the three individuals he saw exit a taxicab at a Leesburg convenience store about 16 hours before the shootings. The convenience store clerk identified appellant as the female who had an injured arm and was bleeding from her mouth, who entered the store alone, briefly conversed with the clerk, and paid for her purchase with a $2 bill. The taxi driver testified that he drove the three passengers to Leesburg from Albany, Georgia, in the early morning hours of December 1. A resident of a military installation near Albany identified appellant as one of the two injured members of a trio who tried to break into his home around 2:45 a.m.

crimes, with all sentences to be served concurrently. Appellant filed a motion for new trial on November 13, and amended the motion on March 3, 2000. The trial court denied the motion for new trial on September 27, 2000, and appellant timely filed a notice of appeal on October 4. The appeal was docketed in this Court on November 2, 2000, and oral argument was heard on February 13, 2001.

December 1, and who told him they had been injured in a car accident. Another Albany resident related that, around the same time, a female and two males stepped into the road along which he was driving, and the two males began shooting at the car. He identified appellant as the female of the trio.

"Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime." OCGA § 16-2-20 (a). "A person is concerned in the commission of a crime only if [s]he: . . . (3) Intentionally aids or abets in the commission of the crime; or (4) Intentionally advises, encourages, hires, counsels, or procures another to commit the crime." OCGA § 16-2-20 (b). Mere presence at the scene of a crime and mere approval of the criminal act are not sufficient evidence to establish that the defendant was a party to the crime. *Jordan v. State*, 272 Ga. 395 (1) (530 SE2d 192) (2000). Proof that the defendant shares a common criminal intent with the actual perpetrators is necessary (*Jones v. State*, 250 Ga. 11, 13 (295 SE2d 71) (1982)), and may be inferred from the defendant's conduct before, during, and after the crime. *Sands v. State*, 262 Ga. 367 (2) (418 SE2d 55) (1992). Furthermore, "[t]o warrant a conviction on circumstantial evidence, the proved facts shall . . . exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-4-6. Where the evidence authorizes the jury to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, the jury's finding will not be disturbed unless the verdict of guilty is insupportable as a matter of law. *Foster v. State*, 273 Ga. 34 (1) (537 SE2d 659) (2000).

The State presented evidence from which the jury could conclude that appellant was willingly present when the victims were killed; that she had been involved in her companions' commission of and attempt to commit crimes in the 24 hours preceding the victims' deaths; that appellant used the fruits of the multi-county crime spree; that she fled the crime scene with her companions; and that she was arrested in possession of property stolen from the murder victims as well as the persons robbed the day before the Gileses were killed. Since there was evidence that appellant was present when the crimes were committed and the jury could infer from her conduct before and after the crimes that she shared the criminal intent of the actual perpetrators, the evidence was sufficient to authorize her convictions as a party to those crimes. *Grace v. State*, 262 Ga. 746 (4) (425 SE2d 865) (1993); *Lobdell v. State*, 256 Ga. 769 (1) (353 SE2d 799) (1987). See also *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Inasmuch as the circumstantial evidence was sufficient to exclude every reasonable hypothesis save that of the guilt of the accused, the jury's verdict will not be disturbed. *Foster v.*

*State*, supra, 273 Ga. 34 (1). However, because the evidence used to prove appellant was guilty of aggravated assault by shooting the murder victims is the same as that used to prove she was guilty of malice murder, the aggravated assaults merged as a matter of fact into the malice murders and the judgments of conviction and sentences entered for the two counts of aggravated assault must be vacated. OCGA § 16-1-7; *McDade v. State*, 270 Ga. 654 (1) (513 SE2d 733) (1999); *Montes v. State*, 262 Ga. 473 (1) (421 SE2d 710) (1992).

2. Appellant complains the trial court committed error when it admitted evidence of criminal acts to which appellant and/or her two male companions were connected and which were committed in other counties in the 24 hours preceding the murders of the Gileses.[2] Citing *Moody v. State*, 237 Ga. 775 (229 SE2d 619) (1976), appellant maintains the State was erroneously permitted to introduce evidence of independent crimes without showing that appellant was a perpetrator of the independent offenses. However, the crimes complained of here were not independent crimes, but were all part of the crime spree that began with the theft of the weapon used to kill one of the murder victims and proceeded inexorably to its climax with the murder of the Gileses and the capture of appellant and her co-indictee. *Davis v. State*, 255 Ga. 598 (9) (340 SE2d 869) (1986). See also *Todd v. State*, 261 Ga. 766 (7) (410 SE2d 725) (1991). Even if the other crimes are deemed to be independent offenses, they are admissible under an exception to the rule against admissibility when they are, as here, mutually dependent crimes (*Barrett v. State*, 263 Ga. 533 (2) (436 SE2d 480) (1993), overruled on other grounds in *Wall v. State*, 269 Ga. 506 (500 SE2d 904) (1998)), or, as stated in Division 1, are evidence establishing the criminal intent necessary to make appellant a party to the crimes. *Grace v. State*, supra, 262 Ga. 746 (4). See also *Lynd v. State*, 262 Ga. 58 (12) (414 SE2d 5) (1992). The trial court did not err in admitting the evidence.

3. (a) Appellant asserts that the pattern jury charge given by the trial court on knowledge misstated the law to appellant's detriment.[3]

---

[2] In addition to the Waycross burglary, the attempted burglary in Albany, and the aggravated assault in Albany mentioned in Division 1, the State also presented evidence of another Waycross burglary, a burglary in Hoboken, Georgia, an attempted car-jacking in TyTy, and an aggravated assault of a police officer that occurred while law enforcement officers were chasing the red GMC Blazer or Jimmy that was suspected in the attempted car-jacking. There was also evidence that the red vehicle was found, damaged and abandoned, in Albany near the site of the Albany aggravated assault and near the site where the taxicab driver picked up appellant and her two male companions and drove them to Leesburg. The damaged red vehicle was registered to co-indictee LeMatty's father and contained a prescription bottle for appellant and items stolen in the Waycross and Hoboken burglaries.

[3] The pattern charge, found in Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, Part 3 (H) (1991) is as follows:

Knowledge on the part of the defendant that the crime of _____ was being commit-

Appellant points out that while the pattern charge informed the jury that the State had a two-pronged evidentiary burden — that the defendant knew a crime was being committed *and* that the defendant knowingly and intentionally participated or helped in the crime's commission — it told the jury that its duty to acquit the defendant came into play only if determined that *neither* prong was proven. Since appellant requested the jury instruction be given, she may not now complain that the charge, given as requested, was error. *Williams v. State*, 270 Ga. 125 (3) (508 SE2d 415) (1998). However, because our review of the pattern charge leads us to conclude the pattern charge is incomplete, we address the merits of appellant's enumeration.

Stating the second sentence of the pattern charge in the conjunctive rather than the disjunctive results in a true but incomplete statement of the law. The charge as given accurately states that the jury has a duty to acquit a defendant if the State does not prove the defendant knew a crime was being committed and does not prove the defendant knowingly and intentionally participated or helped in the crime's commission. What the charge, when stated in the conjunctive, does not tell the jury is that the jury has the duty to acquit the defendant if the State fails to satisfy *either* of the two prongs of its evidentiary burden, i.e., if the State does not prove the defendant knew a crime was being committed *or* if the State does not prove the defendant knowingly and intentionally participated in or helped in the commission of the crime. Reading and considering the jury instructions as a whole to determine whether a contested instruction was erroneous (*Hambrick v. State*, 256 Ga. 688 (3) (353 SE2d 177) (1987)), we note that the jury was told that the State had the burden of proving both prongs beyond a reasonable doubt and that the jury had the duty to acquit appellant if the State failed to prove her guilt beyond a reasonable doubt. While the better practice is to use the disjunctive in the "duty to acquit" sentence so as to state the law accurately and completely and thereby remove any possibility of a misleading jury instruction (cf. *Broomall v. State*, 260 Ga. 220, n. 5 (391 SE2d 918) (1990); *Slaton v. State*, 224 Ga. App. 422 (3) (d) (480 SE2d

---

ted, and that the defendant knowingly and intentionally participated in, or helped in, the commission of such crime, must be proved by the state beyond a reasonable doubt.

If you find from the evidence in this case that the defendant had no knowledge that a crime was being committed, and that the defendant did not knowingly and intentionally commit, participate, or help in the commission of (and was not a conspirator in) the alleged offense, then it would be your duty to acquit the defendant.

On the other hand, should you find beyond a reasonable doubt that the defendant had knowledge that the crime of _____ was being committed, and that the defendant knowingly and intentionally participated or helped in the commission of it, then you would be authorized to convict the defendant.

872) (1997)), the giving of the incomplete charge on the duty to acquit by use of the conjunctive in this case did not constitute reversible error. See *Hemphill v. State*, 242 Ga. App. 751 (2) (b) (531 SE2d 150) (2000); *Leigh v. State*, 223 Ga. App. 726 (3) (478 SE2d 905) (1996). See also *Woods v. State*, 224 Ga. App. 52 (5) (479 SE2d 414) (1996).[4]

(b) Appellant also takes issue with the trial court's illustrative instruction on circumstantial evidence, given in response to an inquiry from the jury. In *Guess v. State*, 264 Ga. 335 (8) (443 SE2d 477) (1994), we addressed the same enumerated error regarding the same illustrative instruction and found no reversible error. We again "discern nothing in the illustration which might serve to mislead or confuse the jury." Id. at 339.

4. Lastly, appellant complains the trial court erred when it denied her motion for change of venue based on excessive pretrial publicity. The trial court held a hearing on the motion after completion of the jury voir dire and before the jury was struck.

> The trial court has the discretion to grant a change of venue and its determination will not be disturbed absent an abuse of that discretion. [Cit.] "In a motion for a change of venue, the petitioner must show (1) that the setting of the trial was inherently prejudicial or (2) that the jury selection process showed actual prejudice to a degree that rendered a fair trial impossible. [Cit.]"

*Happoldt v. State*, 267 Ga. 126, 128 (2) (475 SE2d 627) (1996). We cannot say the trial court abused its discretion when appellant: (1) made no showing that the setting of the trial was inherently prejudicial, i.e., that any publicity was factually incorrect, inflammatory, or reflective of an atmosphere of hostility; and (2) failed to demonstrate that she could not receive a fair trial due to the prejudice of individual jurors since only three potential jurors were excused for having a fixed opinion about appellant's guilt, though all venire members were familiar with the case. *McWhorter v. State*, 271 Ga. 461 (2) (519 SE2d 903) (1999).

*Judgment affirmed in part and vacated in part. All the Justices concur.*

---

[4] As noted by the Court of Appeals in *Nanthabouthdy v. State*, 245 Ga. App. 456 (2) (538 SE2d 101) (2000), it is "inaccurate" to use the disjunctive in the *third* sentence of the pattern charge, which describes when the jury is authorized to convict a defendant.

DECIDED JUNE 11, 2001 —
RECONSIDERATION DENIED JULY 16, 2001.

*Smith, Gambrell & Russell, William V. Hearnburg, Jr., Judy Lam, Edward H. Wasmuth, Jr.,* for appellant.

*John R. Parks, District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ruth M. Bebko, Assistant Attorney General,* for appellee.

